1  SCHIFFRIN BARROWAY TOPAZ & KESSLER, LLP
   Alan R. Plutzik, Of Counsel (Bar No. 077758)
2  L. Timothy Fisher, Of Counsel (Bar No. 191626)
   2125 Oak Grove Road, Suite 120
3  Walnut Creek, CA 94598
   Telephone: (925) 945-0770
4  Facsimile: (925) 945-8792
5                                    *E-filing*
   *Attorneys for Plaintiffs*
6
7  [Additional Counsel Appear on Signature Page]

ORIGINAL
F I L E D

FEB 2 8 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

8              **UNITED STATES DISTRICT COURT**

9             **NORTHERN DISTRICT OF CALIFORNIA**

ADR

10 
   _____
11 RODNEY HUNTER, Individually and On Behalf
   of All Others Similarly Situated,
12
13                              Plaintiff,
14              vs.
15 SiRF TECHNOLOGY HOLDINGS, INC.,
16 MICHAEL F. CANNING, DIOSDADO P.
   BANATAO, GEOFFREY RIBAR and KANWAR
17 CHADHA,
18 
                          Defendants.
   _____

**C08-01210** SC

**CIVIL ACTION NO.**

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

19      Plaintiff, Rodney Hunter ("Plaintiff"), alleges the following based upon the investigation by

20 Plaintiff's counsel, which included, among other things, a review of the defendants' public

21 documents, conference calls and announcements made by defendants, United States Securities and

22 Exchange Commission ("SEC") filings, wire and press releases published by and regarding SiRF

23 Technology Holdings, Inc. ("SiRF" or the "Company"), securities analysts' reports and advisories

24 about the Company, and information readily available on the Internet, and Plaintiff believes that

25 substantial additional evidentiary support will exist for the allegations set forth herein after a

26 reasonable opportunity for discovery.

27

28

- 1 -

## NATURE OF THE ACTION AND OVERVIEW

1.     This is a federal class action on behalf of purchasers of SiRF's securities between October 30, 2007 and February 4, 2008, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.     SiRF Technology Holdings, Inc. develops and markets semiconductor and software products that are designed to enable location-awareness utilizing Global Positioning System ("GPS") and other location technologies. SiRF's technology has been integrated into mobile consumer devices, such as automobile navigation systems, mobile phones, PDAs, GPS-based peripherals and handheld GPS navigation devices, and into commercial applications, such as location servers, asset tracking devices and fleet management systems. SiRF markets and sells its products in three target platforms: wireless handheld devices, such as mobile phones; automotive electronics systems, including navigation and telematics systems; and consumer and compute devices, including personal digital assistants, notebook computers, recreational GPS handhelds, mobile gaming machines, digital cameras and watches.

3.     On February 4, 2008, the Company shocked investors when it announced an 89% year over year decrease in fourth quarter profits. For fourth quarter 2007, the Company reported net income of $0.7 million, as compared to $9.1 million in net income for fourth quarter 2006. Further, the Company stated that its net loss for fiscal 2007 was $10.4 million, as compared to net income of $2.4 million for fiscal 2006. Additionally, the Company gave a "miserable outcome" for the first quarter, predicting a loss of 4 cents per share.

4.     Upon the release of this news, the Company's shares fell $8.91 per share, or 54.76 percent, to close on February 5, 2008 at $7.36 per share, on unusually heavy trading volume.

5.     The Complaint alleges that, throughout the Class Period, defendants failed to disclose material adverse facts about the Company's financial well-being, business relationships, and prospects. Specifically, defendants failed to disclose or indicate the following: (1) that there were not sufficient amounts of orders by major customers to meet the targets set by the Company; (2) that SiRF's acquisition of Centrality Communications, Inc. ("Centrality") and its system-on-chip product line would result in overall lower margins and would adversely affect SiRF's existing product line,

CLASS ACTION COMPLAINT

resulting in lower gross margins for the Company's products; (3) that SiRF was not adequately equipped to deal with competition from other companies offering superior technology, specifically with regard to cellular-enabled products; (4) that SiRF was being forced to decrease prices due to market pressures, which would adversely affect earnings and lead to lower gross margins going forward; (5) that the Company lacked adequate internal and financial controls; and (6) that, as a result of the foregoing, the Company's statements about its financial well-being and future business prospects were lacking in any reasonable basis when made.

6.    As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class Members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

8.    This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

9.    Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b).  Many of the acts and transactions alleged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this Judicial District.  Additionally, SiRF's principal executive offices are located within this Judicial District.

10.    In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

1

**PARTIES**

2      11.      Plaintiff, Rodney Hunter, as set forth in the accompanying certification, incorporated
3  by reference herein, purchased SiRF's securities at artificially inflated prices during the Class Period
4  and has been damaged thereby.

5      12.      Defendant SiRF is a Delaware corporation with its principal executive offices located
6  at 217 Devcon Drive, San Jose, California.

7      13.      Defendant Michael L. Canning ("Canning") was, at all relevant times, the Company's
8  President and Chief Executive Officer ("CEO").

9      14.      Defendant Diosdado P. Banatao ("Banatao") was, at all relevant times, a co-founder
10  of the Company and Chairman of the Company's Board of Directors.

11      15.      Defendant Geoffrey Ribar ("Ribar") was, at all relevant times, the Company's Chief
12  Financial Officer ("CFO") and Senior Vice President of Finance.

13      16.      Defendant Kanwar Chadha ("Chadha") was, at all relevant times, a co-founder of the
14  Company, Vice President of Marketing and a member of the Company's Board of Directors.

15      17.      Defendants Canning, Banatao, Ribar and Chadha are collectively referred to
16  hereinafter as the "Individual Defendants." The Individual Defendants, because of their positions
17  with the Company, possessed the power and authority to control the contents of SiRF's reports to the
18  SEC, press releases and presentations to securities analysts, money and portfolio managers and
19  institutional investors, i.e., the market. Each defendant was provided with copies of the Company's
20  reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and
21  had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of
22  their positions and access to material non-public information available to them, each of these
23  defendants knew that the adverse facts specified herein had not been disclosed to, and were being
24  concealed from, the public, and that the positive representations which were being made were then
25  materially false and misleading. The Individual Defendants are liable for the false statements
26  pleaded herein, as those statements were each "group-published" information, the result of the
27  collective actions of the Individual Defendants.

28

- 4 -

CLASS ACTION COMPLAINT

## SUBSTANTIVE ALLEGATIONS

### Background

18.    SiRF Technology Holdings, Inc. develops and markets semiconductor and software products that are designed to enable location-awareness utilizing GPS and other location technologies, enhanced by wireless connectivity capabilities such as Bluetooth, for high-volume mobile consumer devices and commercial applications. SiRF's technology has been integrated into mobile consumer devices, such as automobile navigation systems, mobile phones, PDAs, GPS-based peripherals and handheld GPS navigation devices, and into commercial applications, such as location servers, asset tracking devices and fleet management systems. SiRF markets and sells its products in three target platforms: wireless handheld devices, such as mobile phones; automotive electronics systems, including navigation and telematics systems; and consumer and compute devices, including personal digital assistants, notebook computers, recreational GPS handhelds, mobile gaming machines, digital cameras and watches.

19.    On August 6, 2007, the Company issued a press release announcing its acquisition of Centrality for 2.1 million shares of SiRF stock. The press release, in relevant part, stated:

> *SiRF Technology Holdings, Inc. (NASDAQ: SIRF), a leading provider of GPS-enabled silicon and premium software location platforms, today announced that it has completed its acquisition of Centrality Communications Inc., a privately held developer of navigation processor solutions for mobile navigation devices based in Redwood City, Calif. The transaction closed on August 6, 2007. Under the terms of the agreement, SiRF acquired all the outstanding shares of Centrality capital stock in exchange for approximately 8.1 million shares of SiRF's common stock, which includes common stock underlying assumed equity awards, and $110 million in cash.*
>
> Originally announced on June 21, 2007, the acquisition of Centrality will enable SiRF to deliver very powerful, end-to-end, multifunction location platforms employing sophisticated system-on-chip (SoC) technology to location-enable a broad range of new devices and services. *It will expand SiRF's engineering capabilities to deliver cost effective products that will address the needs of emerging convergence mobile devices in the portable navigation, automotive, and consumer markets.* The acquisition also helps SiRF customers, operators and content partners to add more value to their offerings and bring their products to market faster while enhancing the consumer experience.

CLASS ACTION COMPLAINT

*"With the addition of the Centrality multifunction SoC platform and multimedia expertise, SiRF is well positioned to go beyond GPS and provide a very attractive value-added product portfolio that addresses the emerging price performance and functionality needs of our target markets,"* said Dr. Michael Canning, president and chief executive officer of SiRF. "We believe this acquisition strengthens our location platform strategy, and enhances our ability to continue to deliver innovative multifunction solutions that set new standards for features and value."

*With its primary focus on portable navigation-infotainment devices, Centrality has developed a range of platforms centered on enhancing the location, information and entertainment experience of consumers.* Based on a proprietary dual-core processor architecture, these SoCs have integrated GPS, DSP, graphics, and multimedia accelerators, providing breakthrough performance while achieving lower cost. The Centrality Atlas family of navigation processors focuses on high performance solutions for the value-sensitive navigation infotainment systems (NIS) market, while the Titan platform is designed for the highest end differentiable solutions. [Emphasis added.]

### Materially False and Misleading
### Statements Issued During the Class Period

20.    The Class Period begins on October 30, 2007. On this day, the Company issued a press release entitled "SiRF Technology Holdings Inc. Announces Financial Results for Third Quarter." Therein, the Company, in relevant part, stated:

SiRF Technology Holdings, Inc. (NASDAQ: SIRF), a leading provider of GPS-enabled silicon and premium software location platforms, today reported unaudited financial results for its third quarter ended September 30, 2007.

*Net revenue in the third quarter of 2007 was $91.2 million, an increase of 43 percent from $63.7 million reported in the third quarter of 2006. Net revenue in the first nine months of 2007 was $229.0 million, an increase of 32 percent from $173.5 million reported in the first nine months of 2006. Gross margin in the third quarter of 2007 was 52.2 percent, as compared to 55.6 percent in the third quarter of 2006. Gross margin in the first nine months of 2007 was 53.7 percent, as compared to 55.7 percent in the first nine months of 2006.*

Net loss for the third quarter of 2007 was $16.1 million, or $(0.28) per diluted share, based on 57.0 million diluted weighted average shares outstanding. This compares with net income of $2.6 million,

or $0.05 per diluted share, based on 55.6 million diluted weighted average shares outstanding in the third quarter of 2006.

Net loss for the first nine months of 2007 was $11.1 million, or $(0.21) per diluted share, based on 54.0 million diluted weighted average shares outstanding. This compares with net loss of $6.7 million, or $(0.13) per diluted share, based on 50.9 million diluted weighted average shares outstanding in the first nine months of 2006.

*     *     *

"We believe our Q3 performance has been exceptional. We have once again posted record revenues on record shipment volumes with excellent profitability and strong bookings momentum. *Our acquisition of Centrality and broadening of our product portfolio with the System-on-Chip (SoC) products has been enthusiastically welcomed by customers, and the SoC products are also breaking revenue and shipment volume records,"* said Dr. Michael Canning, President and CEO.

The assets acquired and liabilities assumed as part of the acquisition of Centrality in August 2007 are reflected in SiRF's consolidated financial statements. As SiRF finalizes certain valuation assumptions, adjustments may be recorded in the related purchase price allocations.

**Q3 2007 Highlights and Business Outlook:**

- *We have successfully closed the merger with Centrality Communications and are integrating our products, platforms and personnel. The resulting combination has exceeded our expectations and has been very well received by customers, vendors and employees alike. We are seeing significant design win momentum at major PND customers for our SoC platforms. We are now working on synergistic extensions of our combined fundamental technology.*

- *Growth in our Automotive business, and particularly in Portable Navigation Devices (PNDs), continues to be very strong and to mirror overall market growth.* In Q3, we made record volume shipments to a number of major customers. In addition, many of our customers, including ASUS, Garmin, HP, Magellan, Mio, Siemens VDO and TomTom, launched new platforms using SiRfstarIII or SiRF SoC based products this quarter.

- *Interest in and demand for our products continues to accelerate in our Wireless business.* One of our key tier one customers launched their first new GPS enabled handset

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

which has been qualified at two operators this quarter; and RIMM continues to launch new GPS-enabled products and expand the number of operators using their platform. Multiple handsets based on the SiRFstarIII platforms have also been announced or moved into volume production by customers such as Mio ASUS and Amoi, one of the leading local handset manufacturer in China. In July, Chung-Hwa Telecom launched LBS services based on a SiRF SUPL 1.0 AGPS server and our SiRFstudio development platform for LBS applications is getting good reception at some of the leading operators.

8

9

10

11

12

13

• In the consumer and mobile computing market, SiRFstarIII architecture is gaining more momentum. Garmin launched a new generation of their SiRFstarIIII based Edge platforms for cyclists and Magellan launched a new family of SiRFstarIII based TRITON™ handhelds featuring National Geographic's award winning full color topographic maps. One of the leading mobile gaming customers launched a GPS accessory with gaming and navigation software for their mobile gaming platform and we are also starting to see increasing interest from digital camera industry. [Emphasis added.]

14

15

21. Also on October 30, 2007, the Company conducted a conference call with analysts and investors. Therein, the following conversations, in relevant part, took place:

16

17

18

19

[CANNING]: Customer interest in our Atlas type and SoC platforms has been very strong, especially in the tier one PND market, and we expect them to be significant contributors to our revenue growth in 2008 and beyond as these and other design wins move into high volume production.

20

\*          \*          \*

21

22

23

24

25

26

27

28

*Interest in and demand for our products continues to accelerate in our wireless business.* One of our key tier one customers has launched their first new GPS-enabled hand set, which has been qualified at two operators. And one of our leading wireless customers, Research in Motion, continues to launch new GPS-enabled products and expand a number of operators supporting their platform. Multiple handsets based on SiRFstarIII platforms have also been announced or moved into volume production by customers such as Mio (inaudible), Asus and Amoi, one of the leading local handset manufacturers in China. *In addition, our diverse customer base continues to introduce mobile products based on our award winning GPS technology. Of particular note this quarter, many of the tier one handset manufacturers have launched GPS Bluetooth accessory modules based on SiRFstarIII and compatible with a variety of existing handsets which can provide GPS navigation,*

CLASS ACTION COMPLAINT

*mapping and other traffic data to the appropriate Bluetooth-enabled phones.*

Our end-to-end location platform continues to gain momentum. For example, LBS services based on a SiRF secure user plain 1.0 AGPS server were launched by Chung-Hwa Telecom in July, and our SiRFstudio development platform for LBS applications is getting good reception at some of the leading operators worldwide. In our consumer markets segment Garmin launched a new generation of their SiRFstarIII based edge platforms for cyclists and Magellan launched a new family of SiRFstar III based TRITON handhelds featuring national geographic's award winning, full color, topographic maps. We're also experiencing good growth and substantial sustained interest from Asian consumer electronics and computing companies in some of the more mobile applications of GPS into media players, cameras and gaming systems. Already a leading manufacturer has introduced a SiRFstarIII based GPS accessory to a portable gaming system, which is expected to be deployed globally at an attractive price point early in 2008.

*With our newly extended product portfolio and a major new operational base in China, we believe there will be substantial growth in this market segment in the next year or so as the use of GPS-based location technology becomes a standard feature in consumer electronics, and we believe that we are extremely well positioned to enjoy that growth.* Earlier this quarter, we signed a major agreement with Intel to jointly develop a series of innovative products designed to bring our GPS technology to mainstream mobile computing platforms. And we continue to receive positive feedback from our customers on this.

\*   \*   \*

*Demand for our products is robust across all market segments and we expect to see Q4 revenues in the range of $99 to $102 million with at least 10% of this revenue coming from SoC products. This will bring revenue for the year into the range $328 million to $331 million.* Assuming a tax rate of 5% to 10%, we are modeling EPS for Q4 in the range $0.31 to $0.33.

\*   \*   \*

[ANALYST]: *So let's say a full quarter of Centrality in Q4. Will that then depress margin or would the higher revenue level, do you expect gross margin to go up sequentially a little bit?*

[CANNING]: *We expect to maintain our gross margins. We have done for the last five years, we expect it to continue.*

- 9 -

CLASS ACTION COMPLAINT

[RIBAR]: *In the 54% to 55% range.*

\*      \*      \*

[CHADHA]: Okay so on the wireless side we do expect more handsets from tier one customers in '08. We expect '08 to be quite a strong year for our wireless based on all the feedback we are getting from handset partners as well as in operators. We just held a Location 2.0 Summit where we brought together key leaders in the handset industry as well as operators, global operators and all the feedback during the Summit as well as in our private conversation is that 2008 will be a strong year with multiple handsets from tier one customers.

\*      \*      \*

[CHADHA]: Yes, I think 2008, clearly there is a significant ramp up in the wireless market. A lot will depend on how quickly can these handsets be qualified by operators and deployed into the marketplace. Let's say that you can talk to the front operators, you can talk to the front handset vendors. All indications are that the growth is very high. The key question is, is the growth 100%, 200%, or even higher than those numbers? So we expect that most of the 3G handsets, especially in the U.S. market, will be GPS-enabled. We expect significant deployment of 3G handset with the location capability in both Europe as well as in Asian markets. So that market clearly will have high penetration of GPS. So based on that, you can model what kind of numbers will be there in terms of unit models.

\*      \*      \*

[ANALYST]: Well then as a follow-up. Did you feel like you've really taken a big brunt of the ASP decline in Q3 so we'll see more modest declines going forward or will we see more of the same?

[CANNING]: Well there's always competition in the marketplace, and *that's something we have expected and forecast for sometime.* So it's not surprising that competitors are there. It's not surprising that if they want to try to win business from us, they try to offer lower prices. But we plan to be just as competitive going forward as we have been in the past. And we expect to win more sockets than we lose and to improve the value of the sockets that we win.

GEOFF RIBAR: So I think the other point is clearly, right, we've been able to sustain our market share, sustain our margin, sustain our business model in this pricing environment. So I think we've done an outstanding job over an extended period of time of maintaining our business. [Emphasis added.]

22.    The statements contained in ¶¶ 20-21 were materially false and misleading when

1  made because defendants failed to disclose or indicate the following: (1) that there were not

2  sufficient amounts of orders by major customers to meet the targets set by the Company; (2) that

3  SiRF's acquisition of Centrality and its system-on-chip product line would result in overall lower

4  margins and adversely affect SiRF's existing product line, resulting in lower gross margins for the

5  Company's products; (3) that SiRF was not adequately equipped to deal with competition from other

6  companies offering superior technology, specifically with regard to cellular-enabled products; (4)

7  that SiRF was being forced to decrease prices due to market pressures, which would adversely affect

8  earnings and lead to lower gross margins going forward; (5) that the Company lacked adequate

9  internal and financial controls; and (6) that, as a result of the foregoing, the Company's statements

10  about its financial well-being and future business prospects were lacking in any reasonable basis

11  when made.

## The Truth Begins to Emerge

13  23.  On February 4, 2008, after the market closed, the Company shocked investors when it

14  issued a press release entitled "SiRF Technology Holdings Inc. Announces Financial Results for

15  Fourth Quarter and Fiscal 2007." Therein, the Company, in relevant part, stated:

> SiRF Technology Holdings, Inc. (NASDAQ: SIRF), a leading
> provider of GPS-enabled silicon and premium software location
> platforms, today reported unaudited financial results for its fourth
> quarter and year-ended December 31, 2007.
>
> Net revenue in the fourth quarter of 2007 was $100.4 million, an
> increase of 35.3 percent from $74.2 million reported in the fourth
> quarter of 2006. Net revenue in fiscal 2007 was $329.4 million, an
> increase of 33.0 percent from $247.7 million reported in fiscal 2006.
> Gross margin in the fourth quarter of 2007 was 48.1 percent, as
> compared to 54.7 percent in the fourth quarter of 2006. Gross margin
> in fiscal 2007 was 50.9 percent, as compared to 54.8 percent in fiscal
> 2006.
>
> Net income for the fourth quarter of 2007 was $0.7 million, or $0.01
> per diluted share, based on 64.3 million diluted weighted average
> shares outstanding. This compares with net income of $9.1 million,
> or $0.16 per diluted share, based on 56.1 million diluted weighted
> average shares outstanding in the fourth quarter of 2006.
>
> *Net loss for fiscal 2007 was $(10.4) million, or $(0.19) per diluted*
> *share, based on 55.5 million diluted weighted average shares*
> *outstanding. This compares with net income of $2.4 million, or*

*$0.04 per diluted share, based on 56.0 million diluted weighted average shares outstanding in fiscal 2006.*

\*       \*       \*

*The assets acquired and liabilities assumed as part of the acquisition of Centrality in August 2007 are reflected in SiRF's consolidated financial statements. The results of Centrality's operations have been included in SiRF's consolidated results of operations since the August 6, 2007 acquisition close date. As SiRF finalizes certain valuation assumptions, adjustments may be recorded in the related purchase price allocations.* [Emphasis added.]

24.    Also on February 4, 2008, the Company conducted a conference call with analysts and investors. Therein, Defendant Canning, in relevant part, stated the following:

As far as gross margin is concerned, I think, since we are only forecasting quarter-by-quarter, we'll -- we'll take it quarter-by-quarter and see how it goes. *We had always expected that gross margins would start to shift down, as ramping of certain products occurred, and as competitive influences came into the market.*

*So for the moment, I think, it's probably best to assume that we'll be around 50% gross margin.* [Emphasis added.]

25.    On February 5, 2008, *Forbes.com* published an article entitled "SiRF Shares Wiped-Out." Therein, the article, in relevant part, stated:

Shares of SiRF Technologies drowned on Tuesday.

The firm closed trading down 54.8%, or $8.91, to $7.36 after announcing fourth-quarter earnings below analyst estimates.

SiRF Technologies makes parts for GPS devices. *The firm saw its shares fall after it reported an 89% decrease in fourth-quarter profits to $0.7 million from $9.1 million the year before. The company also gave a miserable outlook for the first-quarter, predicting a loss of 4 cents per share on revenue of $71 million to $77 million.* Analysts polled by Thomson Financial expected, on average, profit of 24 cents per share on revenue of $92.4 million.

\*       \*       \*

*"The guidance was the big bugaboo," said Jefferies analyst Adam Benjamin. "We've been concerned about Portable Navigation Devices pricing pressure, but thought the wireless would offset that.* Handsets are a billion-unit market; as that takes off that could dwarf the PND market."

CLASS ACTION COMPLAINT

1   Benjamin downgraded the stock to "hold" from "buy" and lowered
    his price target to $9 from $32.
2

3   "I think over time you will see GPS in all handsets," added Benjamin,
    "but the question is 'who is going to benefit from that?'"

4
    *SiRF purchased Centrality Communications, another GPS chip-*
5   *maker, June of last year, giving it the potential to be a bigger player*
    *in the wireless market. Mobile phone currently incorporate GPS*
6   *technology, but it is not widely used. The industry is making a shift*
    *over to 3G, or W-CDMA standards, opening up the market for next-*
7   *gen mobile devices.* [Emphasis added.]

8
    26.   Also on February 5, 2008, *Bloomberg* published an articled entitled "SiRF Drops
9
    After Forecast Misses Analysts' Estimates (Update3)." Therein, the article, in relevant part, stated:
10
    Feb. 5 (Bloomberg) -- *SiRF Technology Holdings Inc., the maker of*
11  *global positioning system chips for Motorola Inc., fell the most in*
    *almost four years in Nasdaq trading after price declines caused*
12  *sales forecasts to miss analysts' estimates.*

13  First-quarter sales will reach as much as $77 million, trailing the
    $92.9 million average of estimates compiled by Bloomberg. Fourth-
14  quarter profit, excluding costs for stock-based compensation, was 28
    cents a share, falling short of analysts' projections.
15

16  *Competition forced SiRF to cut prices, reducing its profit margins,*
    *the company said. It faces a challenge from larger rivals Qualcomm*
17  *Inc. and Texas Instruments Inc., which package GPS chips with*
    *their other mobile-phone electronics. Competition will keep prices*
18  *down this quarter, Chief Financial Officer Geoffrey Ribar said on a*
    *conference call yesterday.*
19

20  ``Design wins in the handset market will be challenging for SiRF's
    stand-alone GPS solution in the face of competition from integrated
21  solutions from larger semiconductor vendors," Soleil Securities
    Corp.'s Peter Friedland said in a report. *"The best outcome for SiRF*
22  *is an acquisition by a larger semiconductor vendor."* The San
    Francisco-based analyst advises investors to hang on to the shares.
23

24  SiRF sales climbed 35 percent to $100.4 million in the fourth quarter,
    the company said. That was close to the $101.2 million average
25  projected by analysts.

26  **Rating Cuts**

27  *At least eight analysts cut their ratings on the stock after San Jose,*
    *California-based SiRF released the results yesterday. SiRF plunged*
28  *$8.91, or 55 percent, to $7.36 at 4 p.m. New York time in Nasdaq*

- 13 -

*Stock Market trading. The decline was the largest since SiRF's
2004 initial public offering.* [Emphasis added.]

27.     On this news, the Company's shares fell $8.91 per share, or 54.76 percent, to close on
February 5, 2008 at $7.36 per share, on unusually heavy trading volume.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

28.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil
Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased SiRF's
securities between October 30, 2007 and February 4, 2008, inclusive (the "Class Period") and who
were damaged thereby. Excluded from the Class are defendants, the officers and directors of the
Company, at all relevant times, members of their immediate families and their legal representatives,
heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

29.     The members of the Class are so numerous that joinder of all members is
impracticable. Throughout the Class Period, SiRF's securities were actively traded on the National
Association of Securities Dealers Automated Quotation ("NASDAQ"). While the exact number of
Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate
discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.
Record owners and other members of the Class may be identified from records maintained by SiRF
or, its transfer agent and may be notified of the pendency of this action by mail, using the form of
notice similar to that customarily used in securities class actions.

30.     Plaintiff's claims are typical of the claims of the members of the Class as all members
of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is
complained of herein.

31.     Plaintiff will fairly and adequately protect the interests of the members of the Class
and has retained counsel competent and experienced in class and securities litigation.

32.     Common questions of law and fact exist as to all members of the Class and
predominate over any questions solely affecting individual members of the Class. Among the
questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by defendants' acts as

1    alleged herein;

2    (b)    whether statements made by defendants to the investing public during the
3    Class Period misrepresented material facts about the business, operations and
4    management of SiRF; and

5    (c)    to what extent the members of the Class have sustained damages and the
6    proper measure of damages.

7    33.    A class action is superior to all other available methods for the fair and efficient
8    adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the
9    damages suffered by individual Class members may be relatively small, the expense and burden of
10    individual litigation make it impossible for members of the Class to individually redress the wrongs
11    done to them. There will be no difficulty in the management of this action as a class action.

12    **UNDISCLOSED ADVERSE FACTS**

13    34.    The market for SiRF's securities was open, well-developed and efficient at all relevant
14    times. As a result of these materially false and misleading statements, and failures to disclose,
15    SiRF's securities traded at artificially inflated prices during the Class Period. Plaintiff and other
16    members of the Class purchased or otherwise acquired SiRF's securities relying upon the integrity of
17    the market price of SiRF's securities and market information relating to SiRF, and have been
18    damaged thereby.

19    35.    During the Class Period, defendants materially misled the investing public, thereby
20    inflating the price of SiRF's securities, by publicly issuing false and misleading statements and
21    omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not
22    false and misleading. Said statements and omissions were materially false and misleading in that
23    they failed to disclose material adverse information and misrepresented the truth about the Company,
24    its business and operations, as alleged herein.

25    36.    At all relevant times, the material misrepresentations and omissions particularized in
26    this Complaint directly or proximately caused or were a substantial contributing cause of the
27    damages sustained by Plaintiff and other members of the Class. As described herein, during the
28    Class Period, defendants made or caused to be made a series of materially false or misleading

1  statements about SiRF's financial well-being, business relationships, and prospects. These material

2  misstatements and omissions had the cause and effect of creating in the market an unrealistically

3  positive assessment of SiRF and its financial well-being, business relationships, and prospects, thus

4  causing the Company's securities to be overvalued and artificially inflated at all relevant times.

5  Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff

6  and other members of the Class purchasing the Company's securities at artificially inflated prices,

7  thus causing the damages complained of herein.

8  ## LOSS CAUSATION

9      37.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the

10  economic loss suffered by Plaintiff and the Class.

11      38.    During the Class Period, Plaintiff and the Class purchased SiRF's securities at

12  artificially inflated prices and were damaged thereby. The price of SiRF's securities significantly

13  declined when the misrepresentations made to the market, and/or the information alleged herein to

14  have been concealed from the market, and/or the effects thereof, were revealed, causing investors'

15  losses.

16  ## SCIENTER ALLEGATIONS

17      39.    As alleged herein, defendants acted with scienter in that defendants knew that the

18  public documents and statements issued or disseminated in the name of the Company were

19  materially false and misleading; knew that such statements or documents would be issued or

20  disseminated to the investing public; and knowingly and substantially participated or acquiesced in

21  the issuance or dissemination of such statements or documents as primary violations of the federal

22  securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of

23  information reflecting the true facts regarding SiRF, their control over, and/or receipt and/or

24  modification of SiRF's allegedly materially misleading misstatements and/or their associations with

25  the Company which made them privy to confidential proprietary information concerning SiRF,

26  participated in the fraudulent scheme alleged herein.

27      40.    Additionally, during the Class Period, and with the Company's securities trading at

28  artificially inflated prices, Company insiders sold 401,923 shares of the Company's stock for gross

proceeds of $9,725,306 received by the Individual Defendants. This trading by Company insiders is evidenced by the following chart:

| Date of Trade | Inside Trader | Number of Shares | Price per Share | Gross Proceeds |
|---|---|---|---|---|
| January 18, 2008 | RIBAR, GEOFFREY G. | 1,923 | $16.28 | $31,306 |
| November 30, 2007 | BANATAO, DIOSDADO P. | 200,000 | $24.18 - $24.18 | $4,836,000 |
| November 29, 2007 | BANATAO, DIOSDADO P. | 200,000 | $24.29 - $24.29 | $4,858,000 |
| | TOTAL: | 401,923 | | $9,725,306 |

### Applicability of Presumption of Reliance:
### Fraud On The Market Doctrine

41.    At all relevant times, the market for SiRF's securities was an efficient market for the following reasons, among others:

(a)    SiRF's securities met the requirements for listing, and were listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)    As a regulated issuer, SiRF filed periodic public reports with the SEC and the NASDAQ;

(c)    SiRF regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)    SiRF was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

42.    As a result of the foregoing, the market for SiRF's securities promptly digested

- 17 -

CLASS ACTION COMPLAINT

1  current information regarding SiRF from all publicly-available sources and reflected such

2  information in the price of SiRF's securities. Under these circumstances, all purchasers of SiRF's

3  securities during the Class Period suffered similar injury through their purchase of SiRF's securities

4  at artificially inflated prices and a presumption of reliance applies.

5  **NO SAFE HARBOR**

6  43.    The statutory safe harbor provided for forward-looking statements under certain

7  circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.

8  Many of the specific statements pleaded herein were not identified as "forward-looking statements"

9  when made. To the extent there were any forward-looking statements, there were no meaningful

10  cautionary statements identifying important factors that could cause actual results to differ materially

11  from those in the purportedly forward-looking statements. Alternatively, to the extent that the

12  statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are

13  liable for those false forward-looking statements because at the time each of those forward-looking

14  statements was made, the particular speaker knew that the particular forward-looking statement was

15  false, and/or the forward-looking statement was authorized and/or approved by an executive officer

16  of SiRF who knew that those statements were false when made.

17  **FIRST CLAIM**
**Violation of Section 10(b) of**

18  **The Exchange Act and Rule 10b-5**

19  **Promulgated Thereunder Against All Defendants**

20  44.    Plaintiff repeats and realleges each and every allegation contained above as if fully set

21  forth herein.

22  45.    During the Class Period, defendants carried out a plan, scheme and course of conduct

23  which was intended to and, throughout the Class Period, did: (i) deceive the investing public,

24  including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other

25  members of the Class to purchase SiRF's securities at artificially inflated prices. In furtherance of

26  this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set

27  forth herein.

28  46.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue

1   statements of material fact and/or omitted to state material facts necessary to make the statements not

2   misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud

3   and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high

4   market prices for SiRF's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.

5   All defendants are sued either as primary participants in the wrongful and illegal conduct charged

6   herein or as controlling persons as alleged below.

7          47.     Defendants, individually and in concert, directly and indirectly, by the use, means or

8   instrumentalities of interstate commerce and/or of the mails, engaged and participated in a

9   continuous course of conduct to conceal adverse material information about SiRF's financial well-

10  being, business relationships, and prospects, as specified herein.

11         48.     These defendants employed devices, schemes and artifices to defraud, while in

12  possession of material adverse non-public information and engaged in acts, practices, and a course of

13  conduct as alleged herein in an effort to assure investors of SiRF's value and performance and

14  continued substantial growth, which included the making of, or the participation in the making of,

15  untrue statements of material facts and omitting to state material facts necessary in order to make the

16  statements made about SiRF and its business operations and future prospects in light of the

17  circumstances under which they were made, not misleading, as set forth more particularly herein,

18  and engaged in transactions, practices and a course of business which operated as a fraud and deceit

19  upon the purchasers of SiRF's securities during the Class Period.

20         49.     Each of the Individual Defendants' primary liability, and controlling person liability,

21  arises from the following facts: (i) the Individual Defendants were high-level executives and/or

22  directors at the Company during the Class Period and members of the Company's management team

23  or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities

24  as a senior officer and/or director of the Company, was privy to and participated in the creation,

25  development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii)

26  each of these defendants enjoyed significant personal contact and familiarity with the other

27  defendants and was advised of, and had access to, other members of the Company's management

28  team, internal reports and other data and information about the Company's finances, operations, and

1  sales at all relevant times; and (iv) each of these defendants was aware of the Company's

2  dissemination of information to the investing public which they knew or recklessly disregarded was

3  materially false and misleading.

4         50.    The defendants had actual knowledge of the misrepresentations and omissions of

5  material facts set forth herein, or acted with reckless disregard for the truth in that they failed to

6  ascertain and to disclose such facts, even though such facts were available to them. Such defendants'

7  material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose

8  and effect of concealing SiRF's financial well-being, business relationships, and prospects from the

9  investing public and supporting the artificially inflated price of its securities. As demonstrated by

10 defendants' overstatements and misstatements of the Company's financial well-being, business

11 relationships, and prospects throughout the Class Period, defendants, if they did not have actual

12 knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such

13 knowledge by deliberately refraining from taking those steps necessary to discover whether those

14 statements were false or misleading.

15        51.    As a result of the dissemination of the materially false and misleading information

16 and failure to disclose material facts, as set forth above, the market price of SiRF's securities was

17 artificially inflated during the Class Period. In ignorance of the fact that market prices of SiRF's

18 securities were artificially inflated, and relying directly or indirectly on the false and misleading

19 statements made by defendants, or upon the integrity of the market in which the securities trades,

20 and/or in the absence of material adverse information that was known to or recklessly disregarded by

21 defendants, but not disclosed in public statements by defendants during the Class Period, Plaintiff

22 and the other members of the Class acquired SiRF's securities during the Class Period at artificially

23 high prices and were damaged thereby.

24        52.    At the time of said misrepresentations and omissions, Plaintiff and other members of

25 the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other

26 members of the Class and the marketplace known the truth regarding the problems that SiRF was

27 experiencing, which were not disclosed by defendants, Plaintiff and other members of the Class

28 would not have purchased or otherwise acquired their SiRF securities, or, if they had acquired such

1 | securities during the Class Period, they would not have done so at the artificially inflated prices
2 | which they paid.

3 |     53.    By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange
4 | Act and Rule 10b-5 promulgated thereunder.

5 |     54.    As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the
6 | other members of the Class suffered damages in connection with their respective purchases and sales
7 | of the Company's securities during the Class Period.

8 | **SECOND CLAIM**<br>**Violation of Section 20(a) of**
9 | **The Exchange Act Against the Individual Defendants**

10 |     55.    Plaintiff repeats and realleges each and every allegation contained above as if fully set
11 | forth herein.

12 |     56.    The Individual Defendants acted as controlling persons of SiRF within the meaning of
13 | Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and
14 | their ownership and contractual rights, participation in and/or awareness of the Company's
15 | operations and/or intimate knowledge of the false financial statements filed by the Company with the
16 | SEC and disseminated to the investing public, the Individual Defendants had the power to influence
17 | and control and did influence and control, directly or indirectly, the decision-making of the
18 | Company, including the content and dissemination of the various statements which Plaintiff
19 | contends are false and misleading. The Individual Defendants were provided with or had unlimited
20 | access to copies of the Company's reports, press releases, public filings and other statements alleged
21 | by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the
22 | ability to prevent the issuance of the statements or cause the statements to be corrected.

23 |     57.    In particular, each of these defendants had direct and supervisory involvement in the
24 | day-to-day operations of the Company and, therefore, is presumed to have had the power to control
25 | or influence the particular transactions giving rise to the securities violations as alleged herein, and
26 | exercised the same.

27 |     58.    As set forth above, SiRF and the Individual Defendants each violated Section 10(b)
28 | and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions

1  as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the

2  Exchange Act. As a direct and proximate result of defendants' wrongful conduct, Plaintiff and other

3  members of the Class suffered damages in connection with their purchases of the Company's

4  securities during the Class Period.

5        **WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

6            (a)    Determining that this action is a proper class action under Rule 23 of the

7                      Federal Rules of Civil Procedure;

8            (b)    Awarding compensatory damages in favor of Plaintiff and the other Class

9                      members against all defendants, jointly and severally, for all damages

10                      sustained as a result of defendants' wrongdoing, in an amount to be proven at

11                      trial, including interest thereon;

12            (c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred

13                      in this action, including counsel fees and expert fees; and

14            (d)    Such other and further relief as the Court may deem just and proper.

15

16                          **JURY TRIAL DEMANDED**

17  Plaintiff hereby demands a trial by jury.

18  Dated: February 28, 2008        SCHIFFRIN BARROWAY TOPAZ & KESSLER, LLP

19

20                          Alan R. Plutzik, Of Counsel (Bar No. 077758)

21                          L. Timothy Fisher, Of Counsel (Bar No. 191626)

                        2125 Oak Grove Road, Suite 120

22                          Walnut Creek, CA 94598

                        Telephone: (925) 945-0770

23                          Facsimile: (925) 945-8792

24                              - and -

25                          Richard A. Maniskas

                        D. Seamus Kaskela

26                          David M. Promisloff

                        280 King of Prussia Road

27                          Radnor, PA 19087

                        Telephone: (610) 667-7706

28                          Facsimile: (610) 667-7056

CLASS ACTION COMPLAINT

## CERTIFICATION

I, Rodney Hunter ("Plaintiff") declare, as to the claims asserted under the federal securities laws, that:

1.    Plaintiff has reviewed the Complaint, and authorizes it's filing.

2.    Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, either individually or as part of a group, including providing testimony at deposition and trial, if necessary.

4.    Plaintiff's purchase and sale transaction(s) in the SIRF Technology Holdings, Inc. (Nasdaq: SIRF) security that is the subject of this action during the Class Period is/are as follows:

| Type of Security (common stock, preferred, option, or bond) | Number of Shares | Bought (B) | Sold (S) | Date | Price per share |
|---|---|---|---|---|---|
| Common Stock | 100 | (B) | | 1/9/08 | $20.00 |
| | | | | | |
| | | | | | |
| | | | | | |

(Please list additional purchase and sale information on a separate sheet of paper, if necessary)

5.    Plaintiff has complete authority to bring a suit to recover for investment losses on behalf of purchasers of the subject securities described herein (including plaintiff, any co-owners, any corporations or other entities, and/or any beneficial owners).

6.    During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except as described below:_____.

7.    Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _27_ day of _February_ 2008

RODNEY HUNTER